328 So.2d 110 (1975)
STATE of Louisiana
v.
Sherman NEWTON.
No. 56186.
Supreme Court of Louisiana.
September 5, 1975.
On Rehearing February 23, 1976.
Rehearing Denied March 26, 1976.
*111 C. R. Whitehead, Jr., Whitehead & McCoy, Natchitoches, for defendant-appellee.
William J. Guste, Jr., Atty. Gen., L. J. Hymel, Jr., Barbara Rutledge, Walter L. Smith, Jr., Asst. Attys. Gen., Ronald C. Martin, Dist. Atty., John S. Stephens, Asst. Dist. Atty., for plaintiff-appellant.
CALOGERO, Justice (dissenting).
The defendant Sherman Newton was indicted for bribery of voters in violation of La.R.S. 14:119.[1] Indicted at the same time for the same offense were ten other defendants. Four of the defendants are charged with giving money to influence voters; seven are charged with accepting money for their votes.[2] The statute makes both activities, giving and accepting, criminal offenses.
Defendants filed a motion to quash the indictments on the ground that they fail to charge an offense which is punishable under a valid statute. La.C.Cr.P. Art. 532(1). Defendants attack the statute on the grounds that it is vague and overbroad in derogation of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, and in contravention of Article I, Section 10 of the Louisiana Constitution of 1921 which requires that "[i]n all criminal prosecutions, the accused shall be informed of the *112 nature and cause of the accusation against him." The trial judge sustained the motion to quash and dismissed the indictments on the ground that the statute was unconstitutional. The state appeals to this Court pursuant to La.C.Cr.P. Art. 912(B)(1).
The language of the statute which is at issue here defined the offense of bribery of voters as "the giving or offering to give, directly or indirectly, any money, or anything of apparent present or prospective value to any voter at any . . . election. . . with the intent to influence the voter in the casting of his ballot." Also proscribed is the "acceptance of, or the offer to accept, directly or indirectly, any money, or anything of apparent present or prospective value, by any such voters under such circumstances."[3] The constitutionality of this language has never before been considered by this Court.[4]
The dual vices of vagueness and overbreadth, although sometimes overlapping, are distinguishable. A vague statute describes conduct in a manner so unclear that it leaves intelligent people uncertain as to the limits of its application. Connolly v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). See Note, The Void-for-Vagueness Doctrine in the Supreme Court,109 Pa.L.Rev. 67 (1960).
An overbroad statute, on the other hand, is clear about what it prohibits, but it stifles expression or conduct which is otherwise protected by the Constitution. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); NAACP v. Alabama, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964). The doctrine of overbreadth is particularly applicable where a statute infringes upon behavior protected by the First Amendment. Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); NAACP v. Alabama, supra. When a statute seems to prohibit free expression, citizens may fail to speak rather than risk prosecution under the statute. N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Reinstein and Silverglate, Legislative Privilege and the Separation of Powers, 86 Harv.L.Rev. 1113 (1973); Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970). Moreover, "it gives enforcement officials the power to select certain citizens, from all of those exercising a particular right, and punish them." Scott v. District Attorney, Jefferson Parish, State of Louisiana, 309 F.Supp. 833, 838 (E.D.La.1970), affirmed 437 F.2d 500 (5th Cir. 1971). See Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).
R.S. 14:119 prohibits, among other things, the indict offering to give anything of apparent or prospective value to any voter with the intent to influence that voter in casting his ballot. This language is not vague; it is clear and unambiguous. But it is overbroad. The statute on its face makes it a crime for political candidates and their spokesmen to do such things as promise voters better government in return for their votes; give voters handbills, buttons, pencils, or dinners to influence them to vote for their candidate; *113 promise to lower taxes, change assessments, or implement welfare reform after election. The speeches of political candidates and their followers are unquestionably protected by the First Amendment. These are the very forms of speech essential to a democracy. As the United States Supreme Court proclaimed in Cox v. State of Louisiana, supra 379 U.S. at 552, 85 S.Ct. at 463,
"Maintenance of the opportunity for free political discussion is a basic tenet of our constitutional democracy. As Chief Justice Hughes stated in Stromberg v. People of State of California, 283 U.S. 359, 369, 51 S.Ct. 532, 536, 75 L.Ed. 1117: `A statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment.'"
Conduct is often a means of expression, falling under the protection of the First Amendment. See Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Cox v. State of Louisiana, supra; State v. Ganch, 263 La. 251, 268 So.2d 214 (1972). When a candidate offers to the voters more fiscally responsible government, he is offering them something of "apparent . . . prospective value" in derogation of R.S. 14:119 while he is exercising him unlimited right of free speech protected by the First Amendment. When a candidate offers a free pencil to a voter, he is offering him something of "apparent present . . . value" in derogation of R.S. 14:119 while he is engaging in conduct protected by the First Amendment. Because the statute on its face prohibits these protected activities along with activities which may constitutionally be proscribed, such as bribery, it is an overbroad statute.
The state argues that these defendants were indicted for giving or accepting money to influence votes, and that they cannot now be heard to challenge the overbreadth of the statute as it pertains to activities in which they were not engaged. Certainly that is the general rule. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974). However, when the statute prohibits free expression protected by the First Amendment, a litigant can attack the statute even though his particular conduct could constitutionally be made criminal by the statute. Broadrick v. Oklahoma, supra Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599 (1962). Litigants are allowed to challenge such statutes "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, supra, 413 U.S. at 612, 93 S.Ct. at 2916. This relaxation of the general rule has been allowed in cases involving statutes which purport to regulate only "pure speech." Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); State v. Adams, 263 La. 286, 268 So.2d 228 (1972); State v. Ganch, supra. It has also been allowed in cases involving statutes which regulate conduct which is protected by the First Amendment. United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); NAACP v. Button, supra Thomhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); City of Baton Rouge v. Ewing, 308 So.2d 776 (La.1975).
The state urges this Court to interpret this statute so as to confine it to constitutional bounds. We refuse to do so. When a court has found that a statute on its face sweeps broadly into areas protected *114 by the First Amendment, the proper disposition of the case is to hold the statute void on its face. Gooding v. Wilson, supra Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Then the Legislature, the proper body for writing statutes, will be able to adopt a bribery of voters statute which is constitutional. As we stated in City of Baton Rouge v. Ewing, supraat 779, "[t]o cure such overbreadth would not so much be a matter of reasonable judicial construction as of substantial legislative revision." In State v. Harrison, 280 So.2d 215 (La.1973) and State v. Ganch, supra, we likewise refused to rewrite overbroad statutes.
For these reasons, we affirm the trial court's holding that R.S. 14:119 is constitutionally infirm, and its action in quashing the indictments.
BARHAM, J., concurs additionally being of the opinion that there are numerous additional constitutional infirmities in the statute.
SANDERS, C.J., and SUMMERS, J., dissent and assign written reasons.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
The majority has held that LSA-R.S. 14:119 is unconstitutional because of overbreadth. The statute provides:

"Bribery of voters is the giving or offering to give, directly or indirectly, any money, or anything of apparent present or prospective value to any voter at any general, primary, or special election, or at any convention of a recognized political party, with the intent to influence the voter in the casting of his ballot.
"The acceptance of, or the offer to accept, directly or indirectly, any money, or anything of apparent present or prospective value, by any such voters under such circumstances shall also constitutebribery of voters.
"Whoever commits the crime of bribery of voters shall be fined not less than five hundred dollars, nor more than one thousand dollars, and imprisoned for not more than one year." (Italics ours).
Although the holding deals only with bribery of voters, it endangers the related statutes prohibiting public bribery (LSA-R.S14:118) and bribery of sports participants (LSA-R.S. 14:118.1), since those statutes are phrased in almost identical language.
At the threshold of the case is a question of appellate review. The motion to quash filed in the trial court alleged only that"the indictment fails to charge an offense which is punishable under a valid statute." In presenting the motion, defense counsel attacked only the fourth paragraph, dealing with the immunity of a participant who gives evidence or makes an affidavit against another, and the penalty clause, directing payment of the fine to the informer. The trial judge sustained the motion to quash on these grounds, but also opined that the prohibition against suspension of the penalty by the court was invalid. The State appealed, assigning as error the ruling of the trial judge on each of the three grounds. Both briefs were addressed to these issues. In a closing paragraph of defendant's brief, however, defense counsel complained that the statute was "overly broad and vague." Apparently, this paragraph impressed the majority of the Court, but the State was not afforded an opportunity to brief this point. I am of the opinion that the matter is not before us, since it was not raised in the trial court or ruled upon by the trial judge. It is well settled that the grounds for unconstitutionality of a statute must be specially pleaded in the trial court to be available on appeal. See State v. Campbell, 263 La. 1058, 270 So.2d 506 (1972); State v. Broussard, 263 La. 342, 268 So.2d 248 (1972); State v. Kavanaugh, 203 La. 1, 13 So.2d 366 (1943). See also City of Shreveport v. Pedro, 170 La. 351, 127 So. 865 (1930).
*115 Assuming, however, that the matter is properly before us, I address the merits.
The language found to be constitutionally objectionable is this:
". . . the giving or offering to give, directly or indirectly, any money, or anything of apparent present or prospective value to any voter at any . . . election. . . with the intent to influence the voter in the casting of his ballot."
A statute is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. State v. Guidry, 247 La. 631, 173 So.2d 192 (1965); Johnson v. Collector of Revenue, 246 La. 540, 165 So.2d466 (1964).
In testing the constitutionality of a statute, the statute must be given "a genuine construction, according to the fair import of . . .[its] words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA-R.S. 14:3; State v. Heck, La., 307 So.2d 332 (1975); State v. Truby, 211 La. 178, 29 So.2d 758 (1947).
When the Court can reasonably do so, it must construe a statute so as to preserve its constitutionality. Pearce ex rel. Structural Pest Control Com'n v. Sharbino, 254 La. 143, 223 So.2d 126 (1969); Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 177 So.2d 576 (1965); Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183 (1929); 16 Am.Jur.2d, Constitutional Law, § 144, p. 345.
As I view the holding, it isolates a portion of the statutory sentence and gives to those words an unrealistic construction. In so doing, it fails to consider the context and purpose of the statute.
The statute is designed to prohibit the corruption of voters. It criminalizes the giving or offering to give money or anything of value to a voter at any election with the specific intent to influence his official vote by this corrupt pecuniary device. LSA-R.S. 14:10 defines specific intent as follows:
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
It is an intent to subject the vote of the recipient to the influence of personal gain rather than the public good. See State v. Begyn, 34 N.J. 35, 167 A.2d 161 (1960).
In the statute, the word "bribery" is used four times. The word "bribe-giver" is used once, and the word "bribe-taker" is used once. The word "bribe" has a well-understood meaning. It means a price or reward to pervert the judgment or conduct of a person. See State v. Smith, 252 La. 636, 212 So.2d 410 (1968); R. Perkins, Criminal Law 474-475 (2nd ed. 1969); Webster's Third New International Dictionary Verbo bribe.
In upholding the constitutionality of the public bribery statute in State v. Smith, supra this Court stated:
". . . [B]ribery is a term of well understood meaning in the criminal law. As pointed out in this same authority, the gist of the offense is that it tends to corrupt . . ."
Significantly, the word "bribe" has such a well-known meaning that the short form indictment for bribery of voters under Article 465 of the Louisiana Code of Criminal Procedure merely reads:
"A.B. bribed C.D., a voter, by giving him (or offering him)____dollars."
The official comment under that article describes bribery of voters as one of the"well-understood crimes."
In the light of the statutory purpose and context, it is incorrect to say, as the majority does, that:
"The statute on its face makes it a crime for political candidates and their spokesmen to do such things as promise voters *116 better government in return for their votes; give voters handbills, buttons, pencils, or dinners to influence them to vote for their candidate; promise to lower taxes, change assessments, or implement welfare reform after election."
A platform promise of better government, lower taxes, or welfare reform made generally to a group of voters is not a giving or offering to give money or a thing of value to a voter within the meaning of the statute. Handbills, buttons, pencils, or dinners are commonly accepted methods of publicizing a candidate's name and qualifications, but they do not violate the statute. Most, if not all, of these items confer no pecuniary benefit, are offered to voters generally, and the intent is to publicize the candidate, not to buy a vote.
In State v. Di Paglia, 247 Iowa 79, 71 N.W.2d 601 (1955), the Supreme Court of Iowa held a similarly phrased statute relating to bribery of sports participants constitutional. The court stated:
"One challenging a statute has the burden to overcome the presumption it is constitutional and to negative every reasonable basis upon which it may be sustained. Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236. Appellant has not met this burden. There is no showing the provisions of this statute which are involved in this case, are indefinite or uncertain. On the contrary, such provisions are explicit and the language clear."
When the words are given a genuine construction in the context of the entire statute, as must be done, the statute does not impinge upon protected speech or other First Amendment rights.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I join with the Chief Justice in the reasons he has assigned in his dissenting opinion.

ON REHEARING
SANDERS, Chief Justice.
The State charged Sherman Newton and ten other defendants with bribery of voters in violation of LSA-R.S. 14:119. Four of the defendants allegedly gave money to voters to influence their votes; the other seven allegedly accepted money for their votes. The defendants filed a motion to quash the indictments on the ground that they fail to charge an offense which is punishable under a valid statute. The trial judge sustained the motion to quash and dismissed the indictments, holding the statute unconstitutional.
The State appealed to this Court pursuant to Article 912(B)(1) of the Louisiana Code of Criminal Procedure. On original hearing, a majority of this Court affirmed the trial court's judgment, holding that the statute was overbroad. On application of the State, we granted a rehearing to reconsider the serious constitutional issues presented.
LSA-R.S. 14:119 provides:
"Bribery of voters is the giving or offering to give, directly or indirectly, any money, or anything of apparent present or prospective value of any voter at any general, primary, or special election, or at any convention of a recognized political party, with the intent to influence the voter in the casting of his ballot.
"The acceptance of, or the offer to accept, directly or indirectly, any money, or anything of apparent present or prospective value, by any such voters under such circumstances shall also constitute bribery of voters.
"Whoever commits the crime of bribery of voters shall be fined not less than five hundred dollars, nor more than one thousand dollars, and imprisoned for not more than one year.
"In the trial of persons charged with bribery of voters either the bribe-giver or *117 the bribe-taker may give evidence, or make affidavit against the other, with immunity from prosecution in favor of the first informer, except for perjury in giving such testimony.
"Any fine imposed and collected from the convicted person or persons under the provisions of this Article shall be paid to the informer or informers who shall give information resulting in the conviction of said person or persons. No penalty imposed under the provisions of this Article shall be suspended or remitted by any court or other authority, provided that this provision shall not be construed against the right of suspensive appeal granted by the Constitution and laws of this State."
A statute is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. State v. Guidry, 247 La. 631, 173 So.2d 192 (1965); Johnson v. Collector of Revenue, 246 La. 540, 165 So.2d 466 (1964). In testing the constitutionality of a statute, the statute must be given "a genuine construction, according to the fair import of . . . [its] words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA-R.S. 14:3; State v. Heck, La., 307 So.2d 332 (1975); State v. Truby, 211 La. 178, 29 So.2d 758 (1947). When the Court can reasonably do so, it must construe a statute so as to preserve its constitutionality. Pearce ex rel. Structural Pest Control Comm'n v. Sharbino, 254 La. 143, 223 So.2d 126 (1969); Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 177 So.2d 576 (1965); Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183 (1929); 16 Am.Jur.2d, Constitutional Law, § 144 at 345. With these principles in mind, we now review the several constitutional issues.
Overbreath Issue
On original hearing, the majority found the following language overbroad and unconstitutional:
". . . the giving or offering to give [and acceptance or offer to accept], directly or indirectly, any money, or anything of apparent present or prospective value to any voter at any . . . election. . . with the intent to influence the voter in the casting of his ballot."
The majority held that this language infringed upon freedom of expression protected by the First Amendment of the United States Constitution, by making it a crime for political candidates to do such things as promise better government to voters for their votes; give voters handbills, buttons, pencils, or dinners to influence them; or promise to lower taxes, change assessments, or implement welfare reform.
We now discern that in so holding, we failed to adequately consider the context and the purpose of the statute. LSA-R.S. 14:3; State v. Heck, supra The purpose of the statute is to prohibit the corruption of voters, which it seeks to do by criminalizing the giving or accepting of money or anything of value at any election with the corrupt intent to influence the elector's vote.
The words "bribery" and "bribe" are used throughout the statute. The word "bribe"is well understood to mean a price or reward corruptly given to pervert the judgment or conduct of a person. See State v. Smith, 252 La. 636, 212 So.2d 410 (1968); R. Perkins, Criminal Law 474-75 (2nd ed. 1969); Webster's Third New International Dictionary verbo bribe.
In upholding the constitutionality of the public bribery statute in State v. Smith, supra this Court stated:
". . . bribery is a term of well understood meaning in the criminal law. As pointed out in this same authority, the *118 gist of the offense is that it tends to corrupt . . . ."
As used in the statute, value is determined by the application of a subjective, rather than an objective, test. The requirement of value is satisfied if the thing has sufficient value in the mind of the person to whom it is corruptly offered to influence his actions. See 12 Am.Jur.2d, Bribery § 7 at 752-53; Winckler, Drafting an Effective Bribery Statute, 1 Am.J.Crim.L. 210, 214 (1972). Bribery statutes in most jurisdictions use general terms because of the common understanding of bribery and its elements. See, e. g., Ariz.Rev.Stat. § 13-283 et seq.; Iowa Code § 739.1; N.Y. Penal Law § 215.15.
Contrary to our first impression, it is clear that a platform promise of better government, lower taxes, or welfare reform made generally to a group of voters or to individual voters is not bribery within the meaning of the statute. Similarly, handbills, buttons, pencils, and dinners are commonly accepted means of publicizing a candidate's name and qualifications, but neither do they violate the statute. Most, if not all, of these items confer no pecuniary benefit, are offered to voters generally, and most important, are offered with the intent to publicize a candidate and his views, not to buy a vote. The restriction achieved by the requirement of a corrupt intent to influence the recipient's vote effectively prevents the statute from infringing upon a candidate's freedom of expression. It also defeats any allegations of vagueness. See State v. Smith, supra
We now address the constitutional issues not reached on original hearing.
Immunity of First Informer
At issue is the following language from the statute:
"In the trial of persons charged with bribery of voters either the bribe-giver or the bribe-taker may" give evidence, or make affidavit against the other, with immunity from prosecution in favor of the first informer, except for perjury in giving such testimony."
The defense argues that by granting immunity on an allegedly arbitrary first-come, first-serve basis, this provision discriminates against any co-defendants seeking similar immunity, denying them equal protection of law. The defense also argues that it unduly limits the prosecutor's discretion in the granting of immunity. We find no merit in these arguments. The statute must be read in pari materiae with LSA-R.S. 14:121 and 15:468, which provide respectively:
LSA-R.S. 14:121:
"The offender, under the public bribery, bribery of voters or corrupt influencing articles, who states the facts under oath to the district attorney charged with the prosecution of the offense, and who gives evidence tending to convict any other offender under those articles, may, in the discretion of such district attorney, be granted full immunity from prosecution in respect to the offense reported, except for perjury in giving such testimony."
LSA-R.S. 15:468:
"Any person may be compelled to testify in any lawful proceeding against another charged with commercial bribery, public bribery, bribery of voters or corrupt influencing, and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or expose him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony."
The Reporter's Comment under LSA-R.S. 14:121 states that the granting of complete immunity to the informer is necessary for proper enforcement of the section because "[c]onvictions in such cases will rarely be secured unless one party testifies against the other."It should be noted that LSA-R.S. 14:121 vests the district *119 attorney with discretion as to the extent of immunity granted, thus curing the omission in LSA-R.S. 14:119 of which the defendants complain.
Additionally, we find our holding in State v. Rodrigues, 219 La. 217, 52 So.2d 756 (1951) to be controlling:
"The conclusion is inescapable that our State has the right to grant immunity to its citizens from being compelled to give testimony that will incriminate them, or to withhold that right, or to give it under certain conditions or subject to certain exceptions. The people of this State have chosen to give it subject to the exception with which we are here concerned [bribery of voters]. We cannot adjudicate on the wiseness of their action. The provisions are plain, unambiguous and subject to effective enforcement."
We conclude that this attack on the statute lacks merit.
Payment of Fine to Informer
The second premise upon which defendants base their challenge to the statute's constitutionality is the last paragraph of the statute which provides in pertinent part:
"Any fine imposed and collected from the convicted person or persons under the provisions of this Article shall be paid to the informer or informers who shall give information resulting in the conviction of said person or persons.. . ."
However, no constitutional arguments are advanced; defendants merely contend that the provision is "contrary to American legal tradition and encourages a person with unclean hands to testify against his fellow perpetrator of the bribe, then collect his thirty pieces of silver from the State." While we acknowledge that this provision is subject to abuse, that is a matter that addresses itself to legislative rather than judicial remedy. A defendant is safeguarded against false testimony by the reiteration in the statute that immunity to the informer does not extend to perjury. We find no deficiency of constitutional dimensions in the provision.
Prohibition against Suspension or Remission of Penalty
The third issue raised in the trial court's judgment is whether or not the statutory language providing that no penalty imposed "shall be suspended or remitted by any court or other authority" infringes upon the function of the court to sentence or the power of the governor to pardon. Since the defendants in this case have not been convicted or sentenced, the issue is before us prematurely, and we pretermit any resolution of it at this time.
For the reasons assigned, the judgment of the district court is reversed; the motion to quash the indictment is overruled; and the case is remanded to the district court for further proceedings consistent with the views herein expressed.
TATE, J., dissents and adheres to our original opinion.
DIXON, J., dissents.
CALOGERO, J., dissents with reasons.
DENNIS, Justice (concurring).
Although the paragraph of the statute providing for payment of fines to informers is probably unconstitutional, it is also severable from the remainder of the statute. Therefore, the indictment should not be quashed.
CALOGERO, Justice (dissenting).
I dissent for the reasons assigned in the majority opinion on original hearing.
NOTES
[1] La.R.S. 14:119 provides:

Bribery of voters is the giving or offering to give, directly or indirectly, any money, or anything of apparent present or prospective value to any voter at any general, primary, or special election, or at any convention of a recognized political party, with the intent to influence the voter in the casting of his ballot.
The acceptance of, or the offer to accept, directly or indirectly, any money, or anything of apparent present or prospective value, by any such voters under such circumstances shall also constitute bribery of voters.
Whoever commits the crime of bribery of voters shall be fined not less than five hundred dollars, nor more than one thousand dollars, and imprisoned for not more than one year.
In the trial of persons charged with bribery of voters either the bribe-giver or the bribe-taker may give evidence, or make affidavit against the other, with immunity from prosecution in favor of the first informer, except for perjury in giving such testimony.
Any fine imposed and collected from the convicted person or persons under the provisions of this Article shall be paid to the informer or informers who shall give information resulting in the conviction of said person or persons. No penalty imposed under the provisions of this Article shall be suspended or remitted by any court or other authority, provided that this provision shall not be construed against the right of suspensive appeal granted by the Constitution and laws of this State.
[2] The charges arise out of transactions in which Sherman Newton purportedly gave money to Lizzie Jones and Sentell Jones; Leslie Newton purportedly gave money to Joe Sloan and Lance Kirts; Mariah Palmer purportedly gave money to Raymond Beavers and Verna Lee Harris; Ella Faye Bonner purportedly gave money to Flora Bell Harris. The cases of all of these defendants were argued jointly before this Court. Because the issue is identical in each of the cases, this opinion controls the others in which separate opinions are being rendered this day.
[3] Other provisions of the statute were also challenged by the defendants and held unconstitutional by the trial judge: the immunity, fine, and penalty provisions. Since we hold the statute unconstitutional for overbreadth, we need not review trial court's ruling as to the constitutionality of these other provisions.
[4] In the case of State v. Smith, 252 La. 636, 212 So.2d 410 (1968), this Court upheld a section of the public bribery statute, La.R.S. 14:118, before an attack that the statute was vague and overbroad. The language challenged was this: "With the intent to influence his conduct in relation to his position, employment or duty." Defendant had not attacked the statutory language at issue here,"anything of apparent present or prospective value," although identical language appears in both statutes, R.S. 14:118 and 119. The Court in Smith did not consider the language now at issue before us.