laCANNELLA, Judge.
In this worker’s compensation action, both parties appeal from the judgment which found that plaintiff, Cora I. Johnson, suffered a work related injury for which she was entitled to Supplemental Earnings Benefits *1369 (SEBs). The hearing officer did not set the amount of SEBs due, awarded Johnson payment for all medical expenses, including medication and transportation, ordered payment for a magnetic resonance imaging test (MRI) and a functional capacities evaluation (FCE). Also the hearing officer ordered payment by defendant, Chateau Living Center (Chateau) of penalties of $2,000 and attorney’s fees of $2,000 upon finding Chateau arbitrary and capricious in its failure to pay for the MRI and the FCE. For the reasons which follow, we affirm the judgment in part, reverse in part and remand for a determination of the amount of SEBs to which plaintiff is entitled.
Johnson was employed as a nursing assistant at Chateau on August 3, 1993 when she alleges that she injured herself when lifting a resident. She reported the incident to her supervisor. Johnson was sent home that evening and told to report to a physician at lathe AMI Clinic. Johnson was examined by Dr. R. Joseph Taminie. She was told to remain home that day and then to return to work at modified duty. A modified duty form was completed by Dr. Taminie and provided to Chateau. Johnson returned to Chateau with the' modified duty form. The modified duty was offered to Johnson at the regular pay but she declined.
Johnson then contacted an orthopaedist, Dr. V.J. Zeringue, whom she saw on August 10, 1993. She complained of pain in her low back radiating through the middle of her back and in her arms. Dr. Zeringue detected some muscle spasm and diagnosed her condition as cervical and lumbar strain/ sprain. Dr. Zeringue considered Johnson disabled from working at that time, and maintains that opinion to the present. Nevertheless, by September 28, 1993 Dr. Ze-ringue no longer detected any muscle spasm despite Johnson’s continuing complaints of pain. On September 29, 1993, Dr. Zeringue recommended that Johnson undergo an MRI. He determined to treat her conservatively with anti-inflammatory cream, heat, a cervical collar, lumbar corset, pain medication and physical therapy with him several times a week. She continued this treatment with Dr. Zeringue through the present, despite her complaints that her condition was worsening.
Meanwhile, at Chateau’s request, Johnson was examined on August 25, 1993 by an orthopedic surgeon, Dr. Timothy Finney. He stated that he found Johnson to be poorly cooperative. On physical examination he found her reflexes equal and no evidence of weakness of the muscle. In his opinion, Johnson was able to perform light duty work. Dr. Finney reported to Chateau that he thought the MRI was unnecessary.
Evidence was introduced at the hearing that Johnson was observed, on August 26, 1993, leaving her apartment and walking one hundred yards to the laundry room. There she was observed gathering her laundry and putting it in a basket. Johnson bent over, picked up the basket, (estimated at twenty pounds) and carried it back to her apartment. At her deposition, she testified that she could not carry a basket full of | Jaundry or anything heavier than her purse. At trial, after being shown the surveillance photographs, Johnson changed her deposition testimony and stated that she could carry laundry. Both Dr. Zeringue and Dr. Finney testified that her carrying the clothes basket was inconsistent with her complaints and provided history.
Based on the reports of Dr. Finney, the AMI Clinic report and the surveillance photographs, Chateau denied the request for the MRI.
On April 19, 1994, Dr. Finney again examined Johnson and, although he found no objective symptoms, he recommended the MRI because of Johnson’s prolonged subjective complaints. The MRI was thereafter authorized and completed on June 1, 1994. After reviewing the MRI, Dr. Finney opined that Johnson can perform her normal work activities and further medical treatment was unnecessary.
Johnson testified at the hearing that she could not work. However, she admitted that she has gone to school for the last two years at Delgado. She drives herself to school *1370 from her home in St. Rose, takes several classes each semester, drives home and studies each day. Johnson filed a Disputed Claim for Compensation form with the Office of Worker’s Compensation, contending that she was entitled to compensation, medical payments, penalties and attorney’s fees. Chateau filed a general denial.
A judge trial was held on June 13, 1994 and the hearing officer took the matter under advisement. Judgment was rendered and signed on August 9, 1994. The hearing officer ruled that Johnson was not totally disabled but was entitled to SEBs. The hearing officer, however, did not set the amount of SEBs due or the weekly rate. The hearing officer found Johnson entitled to medical expense reimbursement. Chateau was ordered to pay for the MRI and an FCE. The hearing officer further found that Chateau was not arbitrary nor capricious in failing to pay compensation but was arbitrary and capricious in failing to pay for the MRI and the FCE. The hearing officer awarded penalties and attorney’s fees of $2,000 each.
Johnson argues on appeal that the hearing officer erred in failing to set the | {¡specific amount of SEBs to which she is entitled. She further argues that the maximum rate should be awarded, because Chateau failed to meet its burden of proving her earning capacity. Johnson also requests additional attorney’s fees for appeal.
Chateau argues that the hearing officer erred in finding that plaintiff was entitled to SEBs and, instead, should have found plaintiff not entitled to any worker’s compensation. In the alternative, Chateau agrees with Johnson that the hearing officer erred in failing to set the amount of the SEBs due, but argues that this court should find that the hearing officer, by her silence, meant to award nothing. Chateau argues that it met its burden of proving light duty work available to Johnson at the same rate of pay and therefore she suffered no decrease in pay. Chateau also argues that the hearing officer erred in finding them arbitrary and capricious in failing to pay for the MRI and FCE, because it did authorize the MRI as soon as Dr. Finney recommended it and, prior to that time, there was ample reason to justify the refusal. Further Chateau argues that no one ever requested authorization of the FCE, so it was erroneous to conclude that Chateau was arbitrary in refusing to pay for it. Finally, Chateau argues that the hearing officer erred in holding them liable for all of Johnson’s medical expenses. Chateau argues that Johnson’s treatment by Dr. Ze-ringue, consisting of physical therapy five times a week, was unnecessary and did not improve her condition.
The law relative to the assessment of SEBs is provided in La.R.S. 23:1221(3) as follows, in pertinent part:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly 16fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for *1371 purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subpara-graph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
The hearing officer, after hearing the testimony and reviewing the medical reports determined that, although there was evidence that plaintiff may have attempted to exaggerate her injury, the medical evidence predominated in her favor. Particularly, Dr. Ze-ringue testified that plaintiff was physically disabled, a view he held initially and reaffirmed at the time of trial. Therefore, the hearing officer found that plaintiff was entitled to some worker’s compensation benefits. The hearing officer determined that plaintiff was entitled to supplemental earnings benefits.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside a trial court’s or a jury’s finding of fact in the ^absence of manifest error or unless it is clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
The hearing officer was called upon to make credibility determinations and was influenced by certain medical findings in concluding that plaintiff had suffered some disability because of a work related accident. This determination is supported by the record and we find no manifest error in the judgment in that regard.
The significant problem on appeal is that while the hearing officer found that plaintiff was entitled to SEBs, she failed to set the amount to be paid. As can be seen from the statute above, the amount of SEBs awarded is based on the hearing officer’s determination of plaintiffs earning capacity and employment availability on a month to month basis. Without a judgment by the hearing officer as to what plaintiff is capable of earning and what she was entitled to recover as supplemental compensation, there is nothing for this court to review on appeal. Accordingly, the case must be remanded to the officer of worker’s compensation for a determination by the hearing officer of the amount of supplemental earnings benefits to which plaintiff is entitled.
Chateau argues that the hearing officer erred in awarding penalties and attorney’s fees after finding that the employer was not arbitrary and capricious in its refusal to pay worker’s compensation benefits. We agree.
*1372 While the hearing officer gave more weight to Dr. Zeringue’s testimony and | smedical findings in holding that plaintiff was entitled to SEBs, she also acknowledged that there was other evidence and testimony upon which Chateau reasonably relied in not paying benefits to plaintiff. Nevertheless, the hearing officer held that Chateau was arbitrary and capricious in refusing to pay for the MRI and the FCE, and assessed penalties and attorney’s fees. The hearing officer ordered that Chateau pay for both those tests. Thus, it appears that in making her ruling, the hearing officer was not cognizant of the fact that Chateau had already had the MRI administered and had paid for it. Therefore, we find that the hearing officer erred in this part of the judgment.
The record indicates that payment for the MRI was authorized in a timely manner succeeding Dr. Finney’s recommendation that the MRI be conducted. Prior to that, the same evidence that justified the employer in not paying benefits, likewise justified the decision to not authorize payment for the MRI. Accordingly, the record does not support a finding that the employer acted arbitrarily and capriciously in its refusal to authorize payment for the MRI. The record further indicates that authorization for the FCE was never requested. Administration of the FCE was suggested as a possible alternative to returning to light duty with the employer. Since the employer developed and offered to plaintiff a light duty schedule of work, there is no showing in the record that not funding the FCE was arbitrary and capricious. Accordingly, the assessment of penalties and attorney’s fees based on the finding that the employer acted arbitrarily and capriciously in refusing to pay for an MRI and an FCE is set aside, because it is not supported by the record.
Finally, Chateau argues that the court erred in ordering that all medical expenses be paid by the employer. Chateau argues that the physical therapy conducted by Dr. Zeringue was not reasonable, necessary and related to her injury, as required by La.R.S. 23:1203(A) to be compensatory. The hearing officer found that the physical therapy by Dr. Zeringue was compensable. We find no error in that determination.
| ¡Plaintiffs primary residual problem from the work related accident was pain. Plaintiff testified that the physical therapy by Dr. Zeringue did help alleviate the pain. Dr. Zeringue testified that the therapy provided plaintiff with some relief, which is why it was continued. Therefore, we find no manifest error in the determination that plaintiff is entitled to payment for her medical expenses and transportation costs.[1]
Accordingly, for the reasons stated above, we affirm the judgment from the Officer of Worker’s Compensation insofar as it held that plaintiff was entitled to supplemental earnings benefits, payment for medical expenses, and payment for a functional capacities evaluation; we reverse the judgment insofar as it held plaintiff was entitled to penalties and attorney’s fees; and we remand the case for the hearing officer to set the amount of supplemental earnings benefit to which plaintiff is entitled.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

. Chateau argues, in the alternative, that the medical reimbursement should be limited to $750 because plaintiff did not seek prior authorization for the physical therapy as required by La.R.S. 23:1142. We find this argument to be without merit under the facts presented. Authorization was sought initially for plaintiff's treatment with Dr. Zeringue. Medical bills were submitted and paid by the employer and, although the employer changed its mind about payment of these medical treatments, it did not so notify Dr. Zeringue.